UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| PEDRO RIVERA, ) | CASE NO. 4:06 CV 2154 |
| ) | |
| Petitioner, ) | JUDGE PATRICIA A. GAUGHAN |
| ) | |
| v. ) | |
| ) | MEMORANDUM OF OPINION |
| ) | AND ORDER |
| ATTORNEY GENERAL OF UNITED ) | |
| STATES OF AMERICA, et al., ) | |
| ) | |
| Respondents. ) | |

On September 7, 2006, pro se petitioner Pedro Rivera filed a "Motion Under 28 U.S.C. § 2244, Ordering Relief from the District Court under 18 U.S.C. § 3621(b) and 3624(c)."[1] Mr. Rivera, who is incarcerated at the Federal Correctional Institution in Elkton, Ohio (F.C.I. Elkton), brings this action against the United States Attorney General, the United States of America, the Federal Bureau of Prisons (BOP) and F.C.I. Elkton Warden T. R. Sniezek. Petitioner asserts that the BOP policy of limiting a prisoner's placement in a Community Corrections Center (C.C.C.) to

---

[1] Considering the nature and content of Mr. Rivera's petition, the court presumes he filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

six months or ten (10%) percent of a prisoner's sentence, whichever is less, is a violation of 18 U.S.C. §§ 3621(b) and 3624(c). He claims that although he would be eligible for placement in a C.C.C. on October 15, 2006, the BOP never offered him the opportunity for C.C.C. placement.

*Background*

Mr. Rivera states that he was sentenced to 35 months in prison on September 9, 2004.[2] Based on the term of imprisonment imposed by the court, he claims that his scheduled release date is April 15, 2007. The BOP, however, failed to "offer" him placement in a C.C.C as the term of his imprisonment neared completion. He asserts that he is eligible for C.C.C. placement as early as October 15, 2006 because that date marks a full six months before his scheduled release date.

In support of his assertions, Mr. Rivera contends that the BOP "routinely placed prisoners in a C.C.C. for the last six (6) months of thier [sic] custodial sentence, regardless of whether six (6) months exceeded the Ten Percent (10%) of the total sentence or not" policy before December 2002. (Pet. at 1.) Mr. Rivera claims that the new BOP policy, which limits placement to the last 10% of an offenders's sentence is "invalid."

*Analysis*

Petitioner claims that the BOP's new C.C.C. placement policy was adopted in violation of the Administrative Procedures Act (APA), is based on an erroneous interpretation of the statute, and violates the Ex Post Facto and Due Process Clauses. He maintains that both the First and Eighth Circuit Courts of Appeal invalidated the very same policy change in Golding v. Winn, 383 F.3d 17 (1st Cir. 2004) and Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004). He argues further that

---

[2] He does not disclose the nature of his offense.

-2-

18 U.S.C. § 3624 only places a limitation on the BOP's obligation to assure that each prisoner spend the latter portion of his or her sentence in a pre-release environment. As such, petitioner does not believe that the BOP is precluded from exercising its discretion by placing a prisoner in a C.C.C. at an earlier stage in his sentence.

*28 U.S.C. § 2241*

Courts have uniformly held that claims asserted by federal prisoners seeking to challenge their convictions or imposition of their sentence shall be filed in the sentencing court under 28 U.S.C. § 2255, see Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996); Cabrera v. United States, 972 F.2d 23, 25-26 (2d Cir.1992); Cohen v. United States, 593 F.2d 766, 770 (6th Cir.1979), and that claims seeking to challenge the execution or manner in which the sentence is served shall be filed in the court having jurisdiction over the prisoner's custodian under 28 U.S.C. § 2241. Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998)(citing United States v. Jalili, 925 F.2d 889, 893 (6th Cir. 1991)); Wright v. United States Bd. of Parole, 557 F.2d 74, 77 (6th Cir. 1977).

In his petition before this Court, Mr. Rivera does not attack his conviction, but the manner in which the BOP is executing his sentence. Therefore, his challenge to the BOP's calculation of his eligibility for C.C.C. placement is appropriately addressed in a §2241 petition. To the extent the court has subject matter jurisdiction, it will now address Mr. Rivera's claims that the BOP's new C.C.C. placement policy violates the APA, is based on an erroneous interpretation of the statute, and violates the Ex Post Facto and Due Process Clauses.

*18 U.S.C. §3624(c)*
*"OLC Memo"*

On December 13, 2002, the Department of Justice's Office of Legal Counsel ("OLC") issued a memorandum regarding the BOP's policy of interpreting 18 U.S.C. § 3624 to provide that

federal inmates be designated in C.C.C.'s for the last 180 days of their sentences, even if that placement exceeded the last ten percent of their sentences. Op. Off. Legal Counsel, slip. op., 2002 WL 31940146 (Dec. 13, 2002)("the OLC Memo.") This policy provided, in part, that 18 U.S.C. § 3621(b) did not give the BOP general authority to place an offender in community confinement from the outset of his sentence or to transfer the offender from prison to community confinement at any time the BOP chose during the course of the offender's sentence. Instead, the OLC Memo interpreted § 3621(b) to provide that offenders were only eligible for confinement in C.C.C.s for the lesser of (i) ten percent of their sentence or (ii) six months; periods the DoJ deemed specifically authorized by 18 U.S.C. § 3624(c).

Several days after the OLC Memo was issued, Deputy Attorney General Larry Thompson issued a memorandum instructing the BOP to transfer all offenders residing in C.C.C.s with more than 150 days remaining on their sentence to a traditional prison facility because the use of C.C.C.s was "unlawful." (Mem. of Deputy Attorney General Larry D. Thompson, December 16, 2002, at 1) ("Thompson Memo.") Four days later, BOP Director Kathleen Hawk Sawyer wrote a memorandum entitled "Community Confinement Procedure Changes" to all federal judges, dated December 20, 2000, stating that the BOP would no longer honor judicial recommendations placing inmates in C.C.C.s for the imprisonment portions of their sentences. See Mem. of BOP Director Kathleen Hawk Sawyer, Dec. 20, 2002, at 1("the December 20, 2002 Memorandum.") Consistent with the changes effected in the December 20, 2002 Memorandum, pre-release into C.C.C. designations became limited to the last 10 percent of a prisoner's sentence, not to exceed six months ("the 10% Rule"). It is this 10% Rule that Mr. Rivera claims is in violation of the APA, the Ex Post Facto and the Due Process Clauses.

**A. Ex Post Facto Clause**

Generally, laws, policies, and other actions violate the Ex Post Facto Clause if they punish behavior that is not illegal at the time it was committed, or increase punishment beyond that which was authorized at the time of the offense. See Garner v. Jones, 529 U.S. 244, 249-50 (2000)(one function of Ex Post Facto Clause is to bar enactments which increase punishment for crime after its commission). The Ex Post Facto Clause is implicated where a law punishes retrospectively: "[a] law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" Miller v. Florida, 482 U.S. 423, 430 (1987) (quoting Weaver v. Graham, 450 U.S. 24, 31 (1981)).

Here, Mr. Rivera states that he was sentenced on September 9, 2004, over two years after the OLC Memo was issued. Considering the fact that his thirty-five month sentence was handed down in 2004, and the OLC Memo had already been in effect for at least two years, there is no valid Ex Post Facto claim in his petition before this court.

**B. Administrative Procedures Act (APA)**

As a matter of law, Mr. Rivera's claim that the BOP's new policy violates the APA fails. The court presumes that his APA challenges are based on the BOP's failure to adhere to the "notice and comment" provision which requires the publication of any "proposed rule making." See 5 U.S.C. 553(b).[3] The rulemaking requirement under § 553 of the APA does not, however, apply to "interpretative rules." 5 U.S.C. § 553(a).

---

[3] Under section 553, it is mandated that: "General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law." 5 U.S.C. § 553(b).

The Sixth Circuit has held that the BOP's December 2002 decree is the kind of rule which is not subject to the APA's rulemaking requirement. Dismas Charities, Inc. v. United States, 401 F.3d 666 (6th Cir. 2005). Noting that unlike rules, an agency's policies do require notice and comment, see United States v. Cinemark, 348 F.3d 569, 580-81 (6th Cir.2003), the Dismas court identified the Thompson and Sawyer memos as BOP rules. Id. at 680; see 5 U.S.C. § 551(4) (" 'rule' means the whole or a part of an agency statement ..."). It was the opinion of the Dismas court that the change in BOP policy regarding placement of federal offenders in C.C.C.s, based on a legal interpretation that the statute limited BOP's authority, was an "interpretive rule" and, as such, not subject to notice and comment rulemaking under the APA. Dismas, 401 F.3d at 680. Therefore, Mr. Rivera cannot sustain his argument that respondents' violated the APA.

**C. Due Process Clause**

Where a federal prisoner will be confined or whether he will be allowed to serve part of his term in a C.C.C. are not matters that a district court has the authority to direct. See 18 U.S.C. § 3621.[4] Instead it is the Attorney General of the United States who has delegated those discretionary decisions to the Director of the BOP. Congress has given federal prison officials full discretion to control the conditions of confinement, and prisoners have no constitutional entitlement to invoke due process claims. Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976); see e.g. Marchesani v. McCune, 531 F.2d 459 (10th Cir.), cert. denied, 429 U.S. 846 (1976) (inmates have neither protected liberty interests nor property interests in custodial classification). As the Supreme Court

---

[4] The statute provides, in relevant part: "The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . .,". 18 U.S.C. § 3621 (emphasis added).

stated in <u>Olim v. Wakinekona</u>, 461 U.S. 238, 250 (1983), "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. [And] . . . an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." <u>Id</u>. at 250 n. 12.

There is no liberty interest in being placed in a community residential program. <u>Id.</u> at 245; <u>Meachum v. Fano</u>, 427 U.S. 215, 225 (1976). "To establish the existence of a liberty interest, a prisoner must show that he has been subjected to an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life,'" <u>see</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995), or that the government's actions "will inevitably affect the duration of his sentence." <u>Id</u>. The petitioner has failed to demonstrate to this Court if or how his delayed transfer to a C.C.C. would result in an "atypical and significant hardship" as required by <u>Sandin</u>. If officials may transfer a prisoner to any prison within a state "for whatever reason or for no reason at all," <u>Meachum v. Fano</u>, 427 U.S. 215, 228 (1976), there is no such interest for process to protect. The Court, therefore, is unable to grant the relief requested given the BOP's broad, virtually unfettered discretion to determine the placement of prisoners.

**D. Erroneous Interpretation of the Statute**

With regard to Mr. Rivera's claim that the BOP has misconstrued Congress's intent this Court cannot address that issue on the merits. Although his other claims were subject to sua sponte dismissal, his claim regarding the BOP's interpretation of § 3624(c) must first be presented to the Bureau. The problem here is that there is no suggestion that Mr. Rivera pursued the matter administratively. This is impermissible. Before filing a habeas corpus petition under 28 U.S.C. § 2241 federal prisoners are required to exhaust their administrative remedies. <u>United States v.</u>

Wilson, 503 U.S. 329, 335 (1992); United States v. Cobleigh, 75 F.3d 242, 251 (6th Cir.1996); Little v. Hopkins, 638 F.2d 953, 953-54 (6th Cir.1981). This requirement is not mandated by the Prison Litigation Reform Act, but is wholly judge-made.[5] See Wesley v. Lamanna, No. 01-3426, 27 Fed. Appx. 438, 438-39 (6th Cir. Oct. 30, 2001).

The administrative remedies a federal prisoners must pursue are set forth at 28 C.F.R. §§ 542.10-16 (2005). As noted above, Mr. Rivera does not indicate that he commenced the grievance process or that it is futile to do so. Because he has failed to acknowledge or allege that he has done so, his petition is prematurely filed and must be dismissed without prejudice. Ginn v. Dewalt, No. Civ. A. 06-CV-242KSF, 2006 WL 2228969, at *2 (E.D. Ky. Aug. 3, 2006). Should petitioner seek expedited consideration of his administrative grievance, 28 C.F.R. § 542.18 provides a mechanism to obtain it.

Based on the foregoing, petitioner's claims pursuant to the APA, as well as the Ex Post Facto and Due Process Clauses are denied and this action is dismissed without prejudice for

---

[5] Quoting the Ninth Circuit in Ruviwat v. Smith, 701 F.2d 844 (9th Cir.1983), Judge Krenzler noted that "[t]he exhaustion requirement is far from an empty ritual, and serves several important functions. . . . :

> The requirement of exhaustion of remedies ... aid[s] judicial review by allowing the appropriate development of a factual record in an expert forum; conserve[s] the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow[s] the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

United States v. Hodge, 674 F.Supp. 585, 587 (N.D. Ohio 1987)(quoting Ruviwat, 701 F.2d at 845).

failure to exhaust administrative remedies regarding the BOP's interpretation of 18 U.S.C. § 3624. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

       IT IS SO ORDERED.

                                            /s/ Patricia A. Gaughan
                                            PATRICIA A. GAUGHAN
                                            UNITED STATES DISTRICT JUDGE

Dated: 11/17/06